**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:16-CV-00010-GNS**

**KATHY JO JOHNSON**                                                                                    **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                         **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Cathy Jo Johnson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The Plaintiff filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (DN 23). Defendant responded (DN 30). Plaintiff's time to file a reply in support of her motion has elapsed, and this matter is ripe for a report and recommendation.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. By Order entered July 18, 2016 (DN 21), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for disability insurance and supplemental security income benefits on April 5, 2012 (Tr. 227, 231). Plaintiff alleged that she became disabled on March 10, 2012 as a result of learning difficulties, asthma, chronic bronchitis, COPD, emphysema, spots on lungs, arthritis in spine, depression, and anxiety (Tr. 297). Administrative Law Judge Patrick B. Kimberlin III ("ALJ") conducted a video hearing on March 19, 2014 (Tr. 43). The ALJ was in Louisville, Kentucky, and the Plaintiff was present in Bowling Green, Kentucky and represented by Mike Breen (Id.). Also present and testifying was Linda L. Jones, an impartial vocational expert.

In a decision dated April 24, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 24-42). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 10, 2012, the alleged onset date (Tr. 29). At the second step, the ALJ determined that Plaintiff's COPD, obesity, generalized osteoarthritis, and depression are "severe" impairments within the meaning of the regulations (Id.). Also, at the second step, the ALJ determined that Plaintiff's GERD and headaches are "non-severe" impairments within the meaning of the regulations (Tr. 29-30). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 30-31).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform a reduced range of light work (Tr. 31). More specifically, the ALJ found that Plaintiff can have only occasional exposure to fumes, gases, noxious odors, and temperature extremes (Id.).

2

Moreover, due to Plaintiff's mental impairment, she is limited to simple and routine job duties and instructions (Id.). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. 36).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 36-37). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 37). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 10, 2012, through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 23). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.

1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. The ALJ, relying on the vocational expert's testimony, concluded that a significant number of jobs exist in the national and local economy that Plaintiff could perform considering her age, education, work experience, and residual functional capacity (Tr. 36-37). Plaintiff offers a number of arguments, none of which is availing. For the reasons set forth below, the undersigned recommends Plaintiff's motion for summary judgment (DN 23) be denied, and judgment be entered in favor of the Commissioner.

A.

Plaintiff first challenges the ALJ's findings concerning her environmental limitations (DN 23 p. 10). As such, Plaintiff contends that the ALJ should have afforded greater weight to the

findings of the state agency physician, Carlos X Hernandez (id.). For his part, Dr. Hernandez concluded that Plaintiff should avoid even moderate exposure to extreme heat, extreme cold, humidity, and wetness (Tr. 129). Dr. Hernandez further opined Plaintiff should avoid all exposure to fumes, odors, dust, gases, and poor ventilation (Id.). On the other hand, the ALJ limited Plaintiff to occasional exposure to fumes, gases, noxious odors, and temperature extremes (Tr. 31). The ALJ explained this slight departure from Dr. Hernandez's recommendation by noting that Plaintiff's most significant symptoms appear to have resolved following a bout with pneumonia (Tr. 34).

Plaintiff contends the ALJ is "playing doctor" by noting that her symptoms appear to have abated following recovery from pneumonia (DN 23 p. 9). But the ALJ is not substituting his own layman's opinion for that of a medical professional. Instead, the ALJ studied the objective record and noticed improvement following the case of pneumonia. For instance, the ALJ notes radiographic studies taken a month after the pneumonia that show clear lungs with no pleural effusion (Tr. 33 (citing Tr. 435). The same radiographic report notes only ill-defined nodularity on the right and concludes Plaintiff's lungs were "otherwise unremarkable for age" (Tr. 435).

The ALJ further noted that Dr. Logan Mast, the consultative examiner, described the above report as reflecting only moderate obstruction (Tr. 33 (citing Tr. 445)). Far from playing doctor, the ALJ is weighing the evidence and using it to support his residual functional capacity findings.

Additionally, Plaintiff points out that Dr. Hernandez conducted his evaluation after Plaintiff's case of pneumonia but nonetheless determined she required "significant restrictions"

6

(DN 23 p. 11). This hyperbolizes the distinction between the ALJ's restrictions and those of Dr. Hernandez. As outlined above, the only functional differences between Dr. Hernandez's opinion and that of the ALJ are differences of degree. Dr. Hernandez advised that Plaintiff should have no exposure to fumes and gases, and the ALJ concluded she should have only occasional exposure to fumes and gases. And, Dr. Hernandez concluded that Plaintiff should have only moderate exposure to temperature extremes, and the ALJ concluded that these restrictions were unnecessary in light of other evidence. The ALJ therefore noted Dr. Hernandez's opinion, assigned it some weight (Tr. 34), and incorporated the opinion into his final assessment. Accordingly, the undersigned concludes the ALJ has supported the environmental restrictions outlined above with substantial evidence and recommends this claim be denied.

B.

Plaintiff next argues that the ALJ erred in failing to consider an increase in Plaintiff's prescription to Gabapentin (DN 23 p. 11). Plaintiff argues the increase in dosage from 300 MG to 800 MG is evidence supporting Plaintiff's subjective allegations of pain. But Plaintiff does not cite any evidence demonstrating that her doctor increased the dosage amount in response to complaints or other evidence of increasing pain.

Plaintiff also notes that her weight has steadily increased, presumably indicating that her obesity has exacerbated her condition. But the ALJ determined Plaintiff's obesity to be a severe impairment (Tr. 29). Moreover, the ALJ discussed the impact of Plaintiff's obesity on her weight bearing joints and determined Plaintiff should, as a result, be limited to a light range of work (Tr. 33). Given the medical record, however, the ALJ concluded that Plaintiff's osteoarthritis was not as disabling as Plaintiff contends (Id.). The ALJ supported this conclusion with reference to the

7

fact that degeneration in Plaintiff's knee was minimal, and an x-ray of Plaintiff's lumbar spine revealed no significant findings (Id., Tr. 515, 544). In other words, the ALJ had no reason to speculate on potential reasons for changes in Plaintiff's Gabapentin dosage because the objective medical record provided substantial evidence to support his findings. The undersigned therefore recommends this claim be denied.

C.

Plaintiff next challenges the ALJ's findings concerning her mental limitations (DN 23 pp. 12-16). Much of this argument is spent disagreeing with the ALJ's finding, based on the consultative examination of Dr. Ollie Dennis, Ed.D., that Plaintiff's psychological evaluation suggested malingering (Tr. 34). Plaintiff contends that she is illiterate, and therefore cannot perform the jobs suggested by the vocational expert.

For purposes of satisfying the fourth step of the five-step sequential evaluation process, the Plaintiff carries the burden of demonstrating that she is disabled. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003). Here, apart from her own testimony and the suspect results of her psychological evaluation, Plaintiff has offered no proof of her illiteracy. Granted, her report cards from eighth grade reflect a number of failing grades in the second semester (Tr. 349), but in her first semester, Plaintiff received all Cs except for one D. Moreover, the reports indicate Plaintiff was absent for nine days in the first semester and thirty-one in the second (Id.). Thus it is no surprise that she received failing grades where she missed over six full weeks of school.

The ALJ was not satisfied that the Plaintiff met her burden of proving she is illiterate. To support his finding, the ALJ noted that Plaintiff scored five out of a possible fifteen on the Ray

8

Item test, designed to detect malingering (Tr. 34 (citing Tr. 483). In his report, Dr. Dennis noted that, in general, a score below ten will classify about 93% of individuals as putting forth very little effort. Individuals who are mildly retarded, for instance, average a score of 9.9, and the Plaintiff scored significantly below that (Tr. 483). Persons whose scores ranged as low as Plaintiff's frequently benefit from guardianships and may well require life-long supervision (Id.). Notably, such dramatic limitations contrast starkly with Plaintiff's appropriate dress and personal hygiene as well as her statements to Dr. Dennis that she independently performs household chores, prepares meals, makes purchases, and operates a motor vehicle, (Tr. 480).

Indeed, the ALJ did not even consider the Ray Item test dispositive of whether Plaintiff was malingering (Tr. 34), instead considering it only a part of his determination. He also noted the fact that Plaintiff refused to cooperate with Dr. Dennis's request that she attempt some basic addition or subtraction problems (Id. (citing Tr. 482). Finally, the ALJ noted that total illiteracy is inconsistent with the fact that Plaintiff attended the eighth grade (Tr. 34). In other words, Plaintiff offered very little evidence to support her contention, and the ALJ supported his decision with substantial evidence. Thus, the undersigned recommends this claim be denied.

Plaintiff next argues the ALJ failed in his assessment of mental functioning because he did not discuss the dosing changes in psychotropic medication (DN 23 p. 15). But Plaintiff does not offer any reasons why such adjustment of medication warrants additional limitations. Rather, Plaintiff offers the conclusory statements that an ALJ may not cherry-pick the record nor ignore a line of contrary evidence (Id.). The ALJ did not cherry-pick the record, but instead focused on the evidence as a whole. An ALJ need not address every piece of medical evidence individually for his decision to nonetheless be supported by substantial evidence. Thacker v.

9

Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004) (unpublished). Here, as noted above, Plaintiff has not even identified how changes in medication type and dosage would, if discussed, have impacted the ALJ's residual functional capacity finding. Moreover, discussion of Plaintiff's medication regimen would be futile where Plaintiff herself noted that the medication was helping (Tr. 441). Finally, the record does not reflect any difficulty with symptom control nor any other significant abnormality (*See* Tr. 548-73). The undersigned therefore concludes that this argument is without merit and recommends that this claim be denied.

Plaintiff's final objection to the ALJ's treatment of her mental limitations is the contention that the ALJ's finding that Plaintiff is limited to simple routine duties and instructions is insufficient to account for the assessment that Plaintiff requires moderate restrictions in persistence, concentration, and pace (DN 23 p. 15). Relying on Ealy v. Comm'r of Soc. Sec., 594 F.3d 504 (6th Cir. 2010), Plaintiff argues that the ALJ should have included more specific limitations in his residual functional capacity finding. Plaintiff's reliance on Ealy is misplaced. In Ealy, two reports were at issue. First, a consultative examiner opined as follows: 1) the claimant's impairment did not affect his ability to understand, remember, and carry out simple and repetitive tasks; 2) the claimant's ability to tolerate the day-to-day stress of employment was markedly limited; 3) the claimant's ability to sustain attention for simple and repetitive tasks was moderately limited; and 4) the claimant's ability to interact appropriately with supervisors and coworkers was moderately limited. Id. at 509.

A state agency psychological consultant reviewed the consultative examiner's findings and concluded the results reflected an inconsistent interpretation of evidence. Id. The state agency consultant opined that the claimant could not work in a position where speed was a

10

factor, could only work in two-hour segments over an eight-hour day, and could only perform simple, repetitive tasks. Id. at 510. The ALJ expressly adopted the function report of the state agency consultant. Id. However, the ALJ's residual functional capacity finding included only limitations to simple, repetitive tasks. Id. at 516. The ALJ did not correctly relay the functional findings of the state agency consultant when questioning the vocational expert, and the Sixth Circuit Court of Appeals held that the discrepancy resulted in a defective hypothetical question. Id.

Here, there is no discrepancy. Plaintiff relies on the premise that the ALJ's limitation to "simple routine duties and instructions" may not adequately account for the impairments suggested by "moderate restrictions in concentration, persistence, and pace." But the Sixth Circuit has held, in an unpublished opinion, that these generalized limitations are, if not interchangeable, at least adequate to provide substantial evidence for a residual functional capacity finding. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 438 (6th Cir. 2014) ("Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods.'"). The ALJ in Ealy omitted concrete functional limitations. Here, on the other hand, it is reasonable for the ALJ to conclude that a limitation to simple, routine, and repetitive tasks is sufficient to account for moderate restrictions in concentration, persistence, and pace. Therefore, the undersigned concludes this claim is without merit and recommends it be denied.

D.

Plaintiff next challenges the ALJ's assessment of Plaintiff's subjective complaints (DN 23 pp. 15-18). Plaintiff contends the ALJ did not consider the factors set forth in the regulations

11

and instead relied on intuition in making his assessment. This is not the case.

First, it is important to note the standard of review in assessing credibility determinations. This court may not overturn an ALJ's credibility determination absent a compelling reason. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). As a result, an ALJ's credibility determination is given great weight and deference. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Here, despite Plaintiff's claims, the ALJ has provided more than adequate reasons to support his credibility assessment and has done so consistent with the Social Security regulations.

As discussed above, the ALJ considered the medical record and properly found that objective medical evidence did not support Plaintiff's subjective complaints. For instance, the ALJ noted Plaintiff's greatly improved lung condition following her bout with pneumonia (Tr. 33-34 (citations omitted)). Furthermore, as also discussed above, the ALJ properly considered Dr. Dennis's opinion. The ALJ considered the test results suggesting probable malingering, but nonetheless assigned significant mental restrictions in his residual functional capacity finding (Tr. 34). And, the ALJ's decision suggests that he did not find Plaintiff's allegations of pain wholly incredible, as evidenced by the fact that he lowered her physical and mental limitations to account for potential distractions caused by either depression or pain (Tr. 34).

The undersigned is convinced that the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and fully complies with the requirements of 20 C.F.R. §§ 404.929, 416.1529, as well as SSRs 96-4p and 96-7p. Therefore, the undersigned recommends this claim be denied.

Finally, Plaintiff argues the ALJ erred in failing to afford weight to third-party reports of Plaintiff's condition (DN 23 at pp. 18-20). The ALJ offered three reasons to explain why he did not afford weight to third-party reports. First, the reports were from friends and family of the Plaintiff and could therefore not be fairly described as objective (Tr. 35). Second, those offering the third-party opinions are not medical professionals, thus their assessment of the intensity and frequency of Plaintiff's symptoms is suspect. And finally, the third-party opinions are, in the view of the ALJ, at odds with the objective medical record (Id.).

An ALJ need only afford demonstrable weight to lay testimony where the testimony is fully supported by the medical record. Lashley v. Sec'y of Health and Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983). On the other hand, where the third-party report is inconsistent with the medical record, the Sixth Circuit Court of Appeals has found it sufficient for an ALJ to include an all-encompassing statement reflecting a full review and consideration of the evidence without making any specific reference to the third-party testimony. *See* Higgs v. Bowen, 880 F.2d 860, 864 (6th Cir. 1988). Here, the ALJ offered three reasons, outlined above, why he did not afford weight to the third-party reports. This easily satisfies the standard set forth in Higgs. Therefore, the undersigned concludes this claim is without merit and recommends it be denied.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:	Counsel