UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00010-GNS-HBB

KATHY J. JOHNSON                                                                                PLAINTIFF

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                               DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Plaintiff's Objection to the Magistrate Judge's Report and Recommendation to Affirm the ALJ's Decision (DN 32). For the reasons discussed below, Plaintiff's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation (DN 31) is **ADOPTED**.

    **I.**  **BACKGROUND**

Plaintiff Kathy Johnson ("Johnson") filed an application for disability insurance and supplemental security income benefits on April 5, 2012, alleging that learning difficulties, asthma, chronic obstructive pulmonary disease ("COPD"), emphysema, spots on lungs, spinal arthritis, depression, and anxiety rendered her disabled as of March 10, 2012. (Administrative R. 297 [hereinafter R.]). Johnson's claims were denied initially and on reconsideration. (R. 152-55, 157-62). Johnson participated in a video hearing before Administrative Law Judge Patrick B. Kimberlin III (the "ALJ") on March 19, 2014. (R. 43). Subsequently, the ALJ issued a decision on April 24, 2014, in which he found that Johnson had not been under a "disability," as defined

1

in the Social Security Act, from March 10, 2012, through the date of the decision, and denied her claims. (R. 37).

In reaching his decision, the ALJ evaluated Johnson's claims under the five-step sequential evaluation process promulgated by the Commissioner. (R. 24-42). At the first step, the ALJ found that Johnson had not engaged in substantial gainful activity since March 10, 2012, the alleged onset date. (R. 29). Second, the ALJ determined that Johnson's COPD, obesity, generalized osteoarthritis, and depression were "severe" impairments within the meaning of the regulations, but that her GERD and headaches were "non-severe" impairments. (R. 29-30). Third, the ALJ concluded that Johnson did not have an impairment or combination of impairments that met or equated to one of the listed impairments in Appendix 1. (R. 30-31). Fourth, the ALJ found that Johnson had the residual functional capacity to perform a reduced range of light work. (R. 31). More specifically, he found that Johnson could have only occasional exposure to fumes, gases, noxious odors, and temperature extremes. (R. 31). The ALJ also determined that Johnson's mental impairments limited her to simple and routine job duties and instructions. (R. 31). Furthermore, relying on testimony from the vocational expert, the ALJ found that Johnson was unable to perform any of her past relevant work. (R. 36). At the fifth step, the ALJ found that, in light of Johnson's residual functional capacity, age, education, past work experience, and testimony from the vocational expert, Johnson was capable of performing a significant number of jobs that exist in the national economy; therefore, he concluded that she was not disabled. (R. 36-37).

Johnson filed a request for review, which the Appeals Council denied. (R. 1-7, 23). Subsequently, Johnson filed suit in this Court seeking judicial review of the Commissioner's final decision. (Compl., DN 1). The matter was referred to the Magistrate Judge, who issued a

Report and Recommendation ("R&R") recommending that judgment be entered in favor of Defendant Nancy A. Berryhill, acting Commissioner of the Social Security Administration ("the Commissioner").[1] (Soc. Sec. Order, DN 21; R. & R. 14, DN 31). Johnson filed objections to the R&R, and the Commissioner responded. (Pl.'s Obj. R. & R., DN 32; Def.'s Resp. Pl.'s Obj., DN 33). This matter is ripe for adjudication.

## II.     JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. *See* 42 U.S.C. § 405(g).

## III.     STANDARD OF REVIEW

The parts of a Magistrate Judge's R&R to which objections are raised are reviewed by the district judge *de novo*. 28 U.S.C. § 636(b)(1). This differs from the standard applied to the Commissioner's decision. That decision, rendered by an ALJ, is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (internal quotation marks omitted) (citation omitted). Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). A court should not attempt

---

[1] At the time of the R&R, Carolyn W. Colvin was the acting Commissioner of Social Security. That position is now held by Nancy A. Berryhill. Therefore, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is automatically substituted as Defendant.

3

to second-guess the factfinder with respect to conflicts of evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).

## IV. DISCUSSION

Johnson raises the following objections to the R&R: (1) the Magistrate Judge incorrectly found no error regarding the environmental restrictions imposed by the ALJ; (2) the Magistrate Judge incorrectly found there was no error in the ALJ overlooking Johnson's medication changes and increasing obesity; (3) the Magistrate Judge disregarded the ALJ's failure to consider functional reports and third party statements concerning Johnson's literacy; and (4) the Magistrate Judge erred in upholding the ALJ's evaluation of Johnson's credibility. These objections are addressed in turn.

### A. Environmental Restrictions

In determining Johnson's residual functional capacity, the ALJ found that Johnson's COPD limited her to occasional exposure to fumes, gases, noxious odors, and temperature extremes. (R. 31). According to Johnson, the ALJ impermissibly relied on his own lay opinion in reaching this environmental limitation because there was no record evidence contrary to the findings of state agency physician Carlos X. Hernandez, who concluded that Johnson should avoid all exposure to fumes, odors, dust, gases, and poor ventilation, as well as even moderate exposure to extreme heat, extreme cold, humidity, and wetness. (R. 129). The Magistrate Judge, however, concluded that the ALJ supported the environmental limitation imposed with substantial evidence. (R. & R. 7).

The Court agrees with the Magistrate Judge. The ALJ did not substitute his own layman's opinion for that of a medical professional; he relied on objective medical evidence. The ALJ departed slightly from Dr. Hernandez's recommendation because Johnson's "most

significant symptoms and findings appear[ed] to have resolved after [a] bout with pneumonia." (R. 34). According to the ALJ, Johnson's respiratory symptoms "did not persist with the same level of severity throughout the alleged disability period, and in fact lightened up once her pneumonia resolved based on the objective evidence and respiratory examinations." (R. 35). As indicated, in reaching his conclusion, the ALJ relied on a number of medical reports, including: a radiology report prepared a month after Johnson suffered from pneumonia that found clear lungs with "no pleural effusion"; a notation of "[a]reas of ill-defined nodularity on the right, which [were] indeterminate"; a recommendation of only "continued surveillance to confirm ongoing stability"; and a conclusion that Johnson's lungs were "otherwise unremarkable for age" and a pulmonary function study that revealed only "moderate obstruction." (R. 33, 435).

Furthermore, Johnson mischaracterizes the ALJ's decision in arguing that he impermissibly concluded that her "symptoms resolved after pneumonia." (Pl.'s Obj. R. & R. 2). Johnson explains, with citations to the National Heart, Lung, and Blood Institute and the Mayo Clinic, that COPD is a progressive disease that "does not resolve." (Pl.'s Obj. R. & R. 1-2). This may be true, but the ALJ did not find that Johnson's COPD went away with her pneumonia. Rather, he relied on medical evidence to conclude that Johnson's "most significant" symptoms had resolved after her bout with pneumonia. (R. 34). The ALJ was tasked with determining Johnson's residual functional capacity at the time based on the record before him, which is what he did. *See* 20 C.F.R. §§ 404.1512, 404.1545(a).

Johnson notes that Dr. Hernandez conducted his evaluation after Johnson's pneumonia passed but nonetheless determined she required "significant restrictions." (R. & R. 6; Pl.'s Obj. R. & R. 2). The ALJ, however, did find considerable restrictions. He found that Johnson had the ability to do only a reduced range of light work and could be exposed to fumes, gases, noxious

odors, and temperature extremes only occasionally. (R. 31). The ALJ acknowledged Dr. Hernandez's opinion, assigned it some weight, and incorporated it into his analysis. (R. 34). The ALJ, in his discretion, deviated from Dr. Hernandez's opinion slightly because he found that the totality of the record better supported limiting Johnson to occasional exposure to pulmonary irritants and temperature extremes. (R. 33-34). This conforms to the ALJ's duty in assessing residual functional capacity.[2]

### B. Plaintiff's Increased Medications and Obesity

The ALJ concluded that Johnson's osteoarthritis was not as disabling as she contended. (R. 33). Johnson argues that the ALJ's conclusion was erroneous because he failed to take due account of changes in her medication and weight in rendering it—during the pendency of her claim, Johnson's Gabapentin dosage was increased from two 300 MG tablets, three times daily, to one 800 MG tablet, three times daily, and her weight went from the lower end of obesity to near morbid obesity. (Pl.'s Obj. R. & R. 2-3). The Magistrate Judge, however, found that the ALJ supported his conclusion with substantial evidence, and the Court agrees. (R. & R. 7-8). The ALJ based his conclusion on the objective medical record, noting that Johnson had only minimal degeneration in her left knee and that an x-ray of her lumbar spine revealed no significant findings. (R. 33-34). There was no need for him to speculate as to why Johnson's Gabapentin dosage increased. Moreover, the ALJ *did* consider Johnson's obesity in reaching his conclusion. He designated Johnson's obesity a severe impairment and discussed its impact on

---

[2] There are differences between a medical source statement and a residual functional capacity assessment prepared by the ALJ. A medical source statement is a functional opinion submitted by a medical source as part of a medical report. 20 C.F.R. §§ 404.1513(c), 416.913(c). By contrast, a residual functional capacity assessment is the ALJ's ultimate finding of what the claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a), 416.946(c). In making this assessment, the ALJ considers the record as a whole, making judgments as to credibility and consistency throughout. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013).

her low back and weight bearing joints. (R. 29, 33). As a result, he determined that Johnson should be limited to a light range of work. (R. 31, 33).

C. **Failure to Consider Functional Reports and Third-Party Testimony**

Johnson next challenges the Magistrate Judge's conclusion that the ALJ based his findings concerning Johnson's mental limitations upon substantial evidence. The ALJ found that Johnson suffers from depression and limited her to simple and routine job duties and instructions. (R. 31, 34). Johnson argues that the ALJ should have imposed greater limitations based on her illiteracy and dosing changes in her prescribed psychotropic medication. (Pl.'s Obj. R. & R. 3-4).

The ALJ found that Johnson failed to meet her burden of proving that she was illiterate. (R. 34). For purposes of satisfying the fourth step of the five-step sequential evaluation process, the plaintiff carries the burden of demonstrating that she is disabled. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Johnson contends that the ALJ's decision was erroneous because he failed to consider her report cards from eighth grade and third-party statements as proof of her illiteracy. The Court finds this argument unpersuasive because the ALJ based his conclusion upon substantial evidence. The ALJ noted that Johnson completed eighth grade and, in her work history report, advised that she performed duties such as writing and completing reports in each of her past jobs—facts inconsistent with a claim of illiteracy. (R. 34). As for the third-party reports, the ALJ explained in detail why he did not afford them weight. (R. 35).

Furthermore, the ALJ supported his conclusion with the results of a consultative examination conducted by Dr. Ollie Dennis, Ed. D., which suggested Johnson was malingering. (R. 34, 484). For example, Johnson scored five out of a possible fifteen on the Ray Item test, a test specifically designed to detect malingering. (R. 34). According to Dr. Dennis, a score of 5 is

"within the range for very limited effort." (R. 483).³ Moreover, during the examination, Johnson refused to attempt a single problem on a sheet of basic arithmetic. (R. 34). Overall, given Johnson's education and work history and Dr. Dennis's report suggesting malingering, the Court concludes that the ALJ reasonably rejected Johnson's claim of illiteracy.

With regard to changes in Johnson's psychotropic medication, an ALJ need not address every piece of medical evidence individually for his decision to be supported by substantial evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The record does not reflect any difficulty with symptom control or any other significant abnormality. (*See* R. 548-73). In fact, Johnson herself noted that the medication was helping; thus, a discussion of her medication regimen would have been futile. (*See* R. 441).

In sum, the record corresponds to what the Magistrate Judge found: the ALJ based his decision regarding Johnson's mental limitations upon substantial evidence.

**D.    The ALJ's Assessment of Credibility**

For her last objection, Johnson states:

> The Magistrate Judge's analysis as to subjective complaints focuses largely on improved lung condition and properly considering the consultative examiner's opinion . . . . For the reasons asserted *supra* and in Plaintiff's opening brief, the ALJ erred in both respects and thus, the case should be remanded for a proper subjective symptom analysis.

(Pl.'s Obj. R. & R. 4-5). Review of the R&R, however, reveals that the Magistrate Judge appropriately analyzed the ALJ's credibility assessment. (R. & R. 11-12). The Court sees no need to

---

³ Dr. Dennis explained that, in general, a score below ten will classify about 93% of individuals putting forth very little effort. (R. 483). Furthermore, according to Dr. Dennis, others who obtained scores as low as Johnson's frequently benefited from guardianships and may well require life-long supervision. (R. 483). As the Magistrate Judge recognized, such severe limitations are in contrast with Johnson's appropriate dress and personal hygiene, as well as her statements to Dr. Dennis that she independently performs household chores, prepares meals, makes purchases, and operates a motor vehicle. (R. & R. 9).

review this issue further given Johnson's perfunctory objection. A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections "wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks omitted) (citation omitted)). For these reasons, Plaintiff's last contention is rejected.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Objection (DN 32) is **OVERRULED** and the Magistrate Judge's Report and Recommendation (DN 31) is **ADOPTED**.

**Greg N. Stivers, Judge**
**United States District Court**
May 26, 2017

cc: counsel of record